UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
GLYNN DUFFOUR                                  CIVIL ACTION

v.                                             NO. 11-1766

KEVIN GUILLOT, ET AL.                          SECTION "F"
```

ORDER AND REASONS

Before the Court is the City of New Orleans and Superintendent Ronal Serpas' motion for summary judgment. For the reasons that follow, the motion is GRANTED.

Background

This civil rights lawsuit arises from an allegedly brutal physical altercation at La Cava's Bar and Grill that resulted in serious injuries to Glynn Duffour at the hands of Kevin Guillot, then an off-duty New Orleans Police Officer.

Glynn Duffour filed this 42 U.S.C. § 1983 civil rights lawsuit against the City of New Orleans; Superintendent of the New Orleans Police Department, Ronal Serpas; former NOPD officer, Kevin Guillot; Kirby Breaux; Darnell Trosclair; Kevin Nichols; La Cava's Bar & Grill; and several unnamed persons. The plaintiff alleges that on his way home from work on July 21, 2010, he stopped into La Cava's Bar & Grill, located at 5012 LaPalco Boulevard in Marrerro,

Louisiana, where he was brutally beaten by Guillot.[1]

>After being in the bar for a short while and listening to the band playing, another La Cava's patron, Kevin Guillot, confronted Duffour for some reason unknown to Duffour.  Because he could not hear what Guillot was saying to him, Duffour agreed to walk outside the bar in an effort to figure out why Guillot seemed angry with him.  At around 10:50 p.m. when Duffour and Guillot walked outside, Guillot indicated that he wanted Duffour to hear him so Duffour leaned over toward Guillot, at which time Guillot put his hand on Duffour and kept it there.  Guillot's side-kick joins them outside.  Guillot talks to Duffour, who puts his wallet away.  When Guillot's side-kick motions with his right hand, Guillot begins physically assaulting Duffour.  At different points during the assault, unidentified people try to intervene, but are stopped from intervening by Guillot's unidentified associates.  According to the plaintiff, Guillot can be seen from a surveillance video[2] standing over Duffour and kicking and punching him as he lay on the ground, dazed.  At around 11:00 p.m., Duffour is helped to his feet, and Guillot walks away, but threatens Duffour, saying that Duffour is going to jail and that everyone will witness that Duffour assaulted a cop.  (Guillot was a NOPD officer at the time; he apparently announced this fact to Duffour and the others observing the assualt).
>  Duffour then removes his work shirt to wipe blood from his face, at which time Guillot walks back to Duffour; Duffour sees him coming and tries to move out of the corner.  Guillot then makes a move with his hands.  Duffour reacts by punching Guillot in his forehead.  Duffour then runs into the parking lot, while Guillot chases behind him.  Duffour throws another punch that connects on Guillot's chin, knocking Guillot back.  Darnell Trosclair, claiming to be a Jefferson Parish

---

[1] This factual summary is reproduced for context only; it is drawn from the complaint's allegations.

[2] The plaintiff's complaint recounts events that can allegedly be seen by viewing surveillance video.  The plaintiff suggests that the surveillance video was filed into the record by Notice of Manual Delivery, but there is no record entry demonstrating that the surveillance video has been filed into the record.

> Sheriff, then pushes Duffour, who raises his hands to let bystanders know that he is not threatening.  Duffour asks for his work shirt back, and wipes more blood off of his face with his undershirt.  At this point, Duffour's pocket knife, which has been in his right pocket, becomes visible.  Guillot's unidentified side-kick motions to Trosclair that Duffour has a knife and somebody yells "He's got a knife!"
> Scott Kemp, Trosclair, Guillot, and Guillot's unidentified side-kick advance upon Duffour, who is standing by his truck.  Scott tells Duffour to give him the knife; Duffour pulls the knife from his pocket and shouts "I am not using a knife!" and throws it on the ground.  Guillot advances on Duffour, making threats; Darnell calls 9-1-1.  Duffour is taken down to the ground and detained against his will until uniformed Jefferson Parish Sheriff's deputies arrive on the scene, at which time he is assaulted by the uniformed officers, who choke him and put cuffs on him so tight he has nerve damage, despite his non-resistance.
> Duffour is led forcefully to a squad car by two male deputies.  One says to the other: "This guy is a 34 on a buddy of ours." ... They then...slam Duffour's head into the squad car.  Duffour's complaint of pain from the handcuffs is ignores as he sits in the police cruiser.  After Duffour is incarcerated, Trosclair and Guillot's side-kick stole Duffour's truck, which was parked at La Cava's; they also stole items from the truck.

Duffour seeks to recover from the defendants for various constitutional violations underlying his § 1983 claims, including violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights; he also asserts <u>Monell</u> liability; as well as various state law claims including false arrest, false imprisonment, assault, battery, and extortion.

On October 14, 2011 this case was re-allotted to Section H in accordance with the Court's directive to re-allot a certain number of cases to newly-seated Judge Jane Triche-Millazo.  On January 24, 2012 defendants Breaux, Trosclair, and Nichols were dismissed

3

without prejudice for failure to prosecute. Thereafter, La Cavas and Guillot were dismissed without prejudice for failure to prosecute.

On September 26, 2012 Judge Milazzo granted the plaintiff's motion to continue the trial schedule to permit the plaintiff additional time to discover the identity of the John Doe defendants and in light of the fact that defendant Guillot's federal criminal conviction delayed the plaintiff's ability to conduct discovery. The next day, Judge Milazzo granted the plaintiff's request for leave to file Guillot's guilty plea and factual basis (relative to a conspiracy involving insurance fraud) into the record; Section H of this Court also granted his request for leave to file a letter from Jefferson Parish District Attorney Paul Connick, noting that his office had refused to pursue the charges against Duffour for aggravated battery.

A second scheduling order was issued in which an October 28, 2013 jury trial date was selected and an October 10, 2013 pretrial conference date was selected. On August 27, 2013 the City and Serpas filed a motion for summary judgment, which was noticed for submission on September 11, 2013. However, the same day the City and Serpas filed their motion for summary judgment, Judge Milazzo recused herself from the case, which she transferred back to this Section of Court. On September 3, 2013 the plaintiff filed a motion requesting a stay and a status conference, as well as a

4

request to continue the trial schedule.  On September 10, 2013 this Court granted the plaintiff's request to continue the trial schedule, continued the submission date on the defendants' motion for summary judgment, and ordered the plaintiff to file opposition papers in compliance with the Court's Local Rules.  Moreover, the Court specifically ruled that

> to the extent the plaintiff relies on his request to stay this case or request for a status conference, counsel should be prepared to file the appropriate papers, in compliance with the Federal Rules of Civil Procedure and this Court's Local Rules, and to support his contention that he is not prepared to oppose a motion for summary judgment that was filed by the City and Serpas.

See Order dated September 10, 2013.  Thereafter, the Court denied without prejudice, as moot, the plaintiff's request for a stay and a status conference, and also granted the plaintiff's request to reinstate defendants and to issue summons.

The City and Superintendent Serpas now seek summary relief, dismissing the plaintiff's claims against them.

## I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of

5

fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of her case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, she must come forward with competent evidence, such as affidavits or depositions, to buttress her claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed.R.Civ.P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

*A.*

The City and Ronal Serpas seek summary relief, dismissing the plaintiff's claims against them. They submit that the plaintiff has failed to establish that there exists any genuine issue of material fact to be tried against them. Further, they submit that Kevin Guilliot was at all times acting outside of the course and scope of his employment with the New Orleans Police Department. Accordingly, they contend that the plaintiff has failed to establish an essential element of his claim arising out of respondeat superior or vicarious liability, and that the plaintiff has failed to plead a Monell claim against the City and Serpas.

In his opposition papers, the plaintiff contends that summary judgment is premature because no discovery has taken place; he also advises that he has proposed a settlement offer to the City and requests that the Court give the parties an opportunity to confect a settlement.

*B.*

1.

The Court first notes that the plaintiff has failed to comply with this Court's September 10th Order, in which the Court mandated that the plaintiff must comply with the Federal and Local Rules if he continued to insist that he was unprepared to respond to the defendants' motion for summary judgment. The plaintiff's excuse

would implicate Federal Rule of Civil Procedure 56(d), but he does not avail himself of the remedy it provides:

> **(d) When Facts Are Unavailable to the Nonmovant.**
> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed.R.Civ.P. 56(d). Notwithstanding this Court's admonition in its September 10th Order and the defendants' citation to Rule 56(d) in its reply papers, the plaintiff has failed to submit an affidavit or declaration to the Court.

2.

Second, the plaintiff nowhere submits any evidence or argument in opposition to the defendants' request for summary relief. He simply suggests that summary judgment is premature and implores the Court to continue the hearing on the motion to give the parties time to confect a settlement. Considering the summary judgment record that establishes the absence of any genuine dispute as to any material fact, the Court declines to delay its ruling.

(a)

Although the U.S. Court of Appeals for the Fifth Circuit forbids a district court from granting summary judgment merely because the motion is unopposed (even if the failure to oppose violated a local rule), if the Court's independent review of the record reveals that there are no genuine disputes as to any

material facts, granting summary judgment is certainly appropriate. See Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985)("The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed."); John v. La. Bd. of Trs. for State Colls. & Univs., 757 F.2d 698, 709 (5th Cir. 1985); see also Fed. R. Civ. P. 56(e)("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it.").[3]

Summary judgment is appropriate when the competent summary judgment evidence demonstrates that there are no genuine disputes as to any material facts and the moving party is entitled to

---

[3] See also Luera v. Kleberg Cnty., Tex., No. 11-40774, 2012 WL 490407 (5th Cir. Feb. 15, 2012). In Luera, an unpublished opinion, the Fifth Circuit noted:
> We have approached the automatic grant of a dispositive motion, such as a grant of summary judgment based solely on a litigant's failure to respond, with considerable aversion . . . . In this case, however, the record makes clear that the district court dismissed the suit based on its merits and not as a sanction.

Id. at *1-2 (noting that the plaintiff did not respond to the defendant's motion for summary judgment, that the district court treated the motion as unopposed, and that the district court then proceeded to analyze the merits in granting the motion).

judgment as a matter of law. See Fed. R. Civ. P. 56(a). Addressing the merits of the defendants' motion, the Court determines that the motion indeed has merit.

(b)

The City and Serpas seek a judgment dismissing the plaintiff's § 1983 claims, including a Monell claim, as well as the plaintiff's claims that the defendants violated his Louisiana constitutional rights, and other state law claims. The defendants submit that they cannot, under any theory of recovery, be held liable for the intentional acts perpetrated by Guilliot, who was off-duty when the alleged assault occurred. The defendants further submit that the plaintiff has failed to allege and prove that a policy, practice, or custom of Superintendent Serpas and the City was the moving force behind any alleged constitutional violation sufficient to establish any element of his Monell claim. The Court agrees.

First, the plaintiff's state law claims against the City and Serpas pursuant to respondeat superior or vicarious liability must be dismissed because the record evidence confirms that Guilliot was off-duty at the time he allegedly physically assaulted Mr. Duffour; this evidence undermines any naked claim that Guilliot was somehow acting in the course and scope of his employment with the New Orleans Police Department when he allegedly intentionally assaulted Mr. Duffour at a bar. See generally Baumeister v. Plunkett, 673 So.2d 994 (1996). And Duffour fails to submit any evidence or

10

argument explaining how the scope of employment test could be satisfied under the circumstances presented.

Second, the plaintiff's Monell claim against Serpas in his official capacity and the City must fail.

Municipalities are "persons" within the meaning of § 1983 and may be liable under this law if the governmental body itself subjects a person to, or causes a person to be subjected to, a deprivation of rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). But, it has been cautioned, "[t]hey are liable only for their own acts and not those attributed to them by principles of *respondeat superior*." Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004)(citing Monell, 436 U.S. at 691-92). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.

To determine whether municipal liability attaches, the Court looks to whether unconstitutional conduct is directly attributable to the municipality through some official custom or policy; "isolated unconstitutional actions by municipal employees will almost never trigger liability." See Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)(citations omitted). Indeed, the rules for imposing municipal liability are well-

11

settled; proof of three elements is central: (1) a policy maker; (2) an official policy or custom; and (3) causation: a violation of constitutional rights whose "moving force" is the policy or custom. Id. (citing Monell, 436 U.S. at 694).[4] Official (Monell) municipal policy, the U.S. Supreme Court has instructed, "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." See Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011)(citations omitted)("These are 'action[s] for which the municipality is actually responsible.'").

Duffour's Monell claim fails as a matter of law because Duffour has alleged no facts to support the legal conclusion that a policy or custom was the moving force behind any constitutional harm. Nor does Duffour allege any facts to support a failure-to-train theory of liability. At most, Duffour alleges intentional, isolated, after-hours conduct by Guilliot, which is insufficient to state a Monell claim.

Finally, the City and Serpas have demonstrated that the plaintiff's state constitutional claims, as alleged against them, are without merit for the reasons submitted by the defendants. The

---

[4] Proof of these three elements is necessary "to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Burge v. Parish of St. Tammany, 187 F.3d 452, 471 (5th Cir. 1999) (citation omitted).

plaintiff has not submitted any substantive argument in his opposition papers; nor has he submitted any evidence suggesting that he can satisfy his burden to prove any alleged state constitutional violations as against the City and Serpas. "'[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of summary judgment' for the moving party." United States ex rel. Farmer v. City of Houston, 523 F.3d 333, 337 (5th Cir. 2008)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

IT IS ORDERED: that the City and Ronal Serpas' motion for summary judgment is hereby GRANTED; the plaintiff's claims against the City and Serpas are hereby dismissed.

New Orleans, Louisiana, October 16, 2013

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

13